Your Honor, this is the first case of the afternoon, Fall 210-1075. P.S.C. Sheridan Memorial, Morris Memorial Foundation v. Village of Gurnee. On behalf of the Admiralty, Mr. Adam Kingsley. On behalf of the Admiralty, Ms. Julie Tapper. Both sides ready to proceed? Yes, Your Honor. Then you may proceed when you're ready. Good afternoon. Adam Kingsley on behalf of the Private Jeffrey Morris Memorial Foundation and Kirk Morris. We believe that the Foundation's amended complaint states a claim for mandamus, declaratory judgment, unjust enrichment, and repletion. And that the case should be remanded to the trial court so that discovery can be conducted on the factual issues that are important to the determination of the claims. I'd like to start with the mandamus and declaratory judgment claim. If this project were built on private property, if the foundation were attempting to build this memorial on their own property, there's no doubt that we would state a claim for mandamus and equitable estoppel. The acts here of the Village of Gurnee are prototypical acts that courts have found warrant the issuance of a building permit to allow a property owner to complete whatever project they have, in fact, begun. The acts here include the 2005 resolution of the Village, which essentially... That is a significant factual difference, Your Honor. There's no doubt about that. There's no doubt that I cannot cite you a case where the project has been built on public property. I guess the question is whether that's a legal difference that's determinative of the mandamus count. And that is obviously up to you to make that decision. I do not deny that that is a significant factual difference. I would merely point out that if these acts were taken with respect to a private property owner, they would, in fact, make out a mandamus claim, and I don't doubt that they would. And just to review those, they were the approval of the 2005 resolution, the actual issuance of building permits that allowed construction. The Village was a co-applicant for a watershed development permit that was issued by the SMC. And, of course, you've got the foundation and their donors' physical activities on the site, which commenced in 2005 and went through 2009. They were given access to the site, really unfettered, to go ahead and start to build the memorial in accordance with the plans that were approved by the Village. Again, those acts are the type of acts by a governmental entity that would prevent the governmental entity from, four years later in 2009, refusing to issue a building permit and essentially evicting the foundation from the site where it had been for an extended period of time. Counsel, was there ever any written agreement authorizing the Village to build the memorial on the Village's property? No. The closest what we've got is the 2005 resolution, which essentially acknowledges that this will be the site of a memorial. Of course, that was issued after a meeting, after a city council meeting or a Village board meeting at which the presentation was made. So, clearly, that resolution was linked to the presentation made by the foundation. There's no contract here. There's no development agreement here. I acknowledge that. But there is a course of conduct over the course of four years allowing the foundation to physically access the site. Now, with respect to the question of Michael Olstaple and the fact that this is government property, the question ultimately is the acts of the government. And whether it's governmental property or it's private property, has the government taken certain acts that essentially prevent it from reversing course and mandate the project that has started to be completed? And I don't think, even though it's a factual difference, I don't think it's an ultimate legal difference or a necessary legal difference that this project was ultimately on public property rather than private property. But I understand that this is a different factual situation than we've seen in prior cases. But I do think that the government acts here are definitive and, in some ways, compelling in terms of allowing the foundation to complete its project. But if the court ultimately determines that that is an insurmountable legal barrier, the fact that this is public property makes all the difference, then I think that's all the more reason to take a look at our account for unjust enrichment. If we're not allowed to finish this memorial as we had planned and expected and as the village had allowed us to do for a significant period of time, then I think it's clear that we should be, or the foundation should be, reimbursed for its labors. The foundation of an unjust enrichment claim is a benefit given to one entity whose retention would violate the fundamental principles of justice, equity, and good conscience. And I would say here that clearly there's a benefit that has been provided to the village of Gurnee. I think our complaint details the physical benefits to the property. Doesn't relief on that claim hinge on whether or not the village completes the memorial? Yes, Your Honor. I absolutely believe that it does. I absolutely believe that it does, and that is a factual question that needs to be answered. We pled in our complaint that since we were – since the foundation was evicted in essentially 2009, that the village has done nothing with the property. The only indication by the village was that it was, quote, going in a different direction, and there was no physical indication that the village intended to complete the memorial. That is an important point that needs to be resolved in discovery, and I would agree that if the village goes and essentially completes the memorial in substantial compliance or even a reasonable compliance with the plans, then I think there's a good argument that the foundation doesn't have a case and doesn't have a claim. Is that true whether or not the foundation is involved in the ultimate building, I guess, of the memorial? I think that's a good question, Your Honor. I think, again, if the memorial was completed in substantial compliance with the plans but merely the foundation was not the agent of completion or perhaps the foundation was not recognized in some way of honor or in terms of their name being associated with it, I think there's a good case that the village could make that the fundamental expectations of the foundation were in fact met. But that's not what we've alleged in our complaint. What we've alleged in our complaint is that nothing has happened on this site, that the village has taken no steps to complete the memorial, that they have not committed to completing the memorial. They might choose to make this a passive part.  We don't know what the village's intent is with respect to this, and this is something that needs to be explored in discovery. Do you have any understanding, in light of the last comment, maybe it has to be explored if you get to the point of discovery, but why did the village seemingly shift direction in working with the foundation? I think there was a political shift in the village. There was a prior administration had approved this, had allowed the development over a period of time. The foundation was working in a little bit of fits and starts. I mean, they would raise some money and do some work and then go back and raise some more money and do some work because the site was more challenging than initially thought because of the debris that was left by the demolition of the prior police station. And in 2009, the village was, excuse me, the foundation was essentially trying to get to a stage where it could do more work on the memorial. And it went to the village and said, you know, we'd like a building permit. You've given building permits to us in the past, but we'd like to come back on the site and do some more work. And as we've alleged in the complaint, the mayor of the village contacted Mr. Morris and basically said, we're not issuing you a building permit and we don't want you on the site anymore. That's what I know has been alleged in the complaint. Beyond that, it's really a question of what the village's rationale is. I will say, and it's alleged in the complaint, that after the lawsuit was filed, or excuse me, prior to the time the lawsuit was filed, but that after we were directed to vacate the site, that there was actually a development agreement that was passed by the village board that was ultimately vetoed by the mayor. And so that did not come to fruition. And at this point in time, we don't know what the future of the site is. And I do believe that's a very relevant point. I think that the trial court believed, and I think counsel has argued, that because the foundation did not expect to be paid from the time that it began the work, that means that there can be no unjust enrichment claim. Because unjust enrichment is based upon the expectations of the person doing the work. And I would agree also that we are not a typical contractor who expects to be paid for its services. But we did have legitimate expectations regarding this particular site. And one of the legitimate expectations would be that the memorial would be built in accordance with the plans. And I dare say that the foundation and its donors would not have provided the money and done this work without that reasonable expectation that they would be allowed to complete. And that given that that was clearly what we'd like to do is complete. But if we can't complete, then it seems that our expectations have been dashed. And the least that we can do is compensate it for the services. Would the unjust enrichment account give you an adequate remedy at law? I mean, do you have an adequate remedy here? Yeah. It would be- I know it's a very pointed question. It's not the preferred remedy as compared to being able to complete. But it is a remedy that would compensate us in some ways. One could say that property is unique and therefore it's not the precise remedy. But it clearly would be, if there were money damages issued, a remedy that I think in some ways the foundation could accept. And if that money- If there wasn't an unjust enrichment reward would go back to the foundation, not to the individual donors. That's right, Your Honor. The donors contributed to the foundation. Some of it was in kind, but the money would go back to the foundation. I can say that the foundation would then take that money and find a different site and relocate the memorial somewhere else. One of the difficulties is if the foundation has to go somewhere else to start from scratch, when essentially they've had all these donors who've contributed, essentially it would at least give the foundation a start on relocating to a different location and moving forward with its original plans. And then I would just like to end by saying that we also have a ruplevin count. We believe that there are certain flag poles that are removable, chattel or can be removed from the site. We understand that a lot of the improvements to the site cannot be moved or removed, and we clearly would not want to dismantle what's there. But we do think there's a question of our right to at least remove and bring back these flag poles, which we don't believe were ever formally dedicated to the village. And again, we're placed on the condition that the memorial be completed as planned. I have a second question. Ruplevin requires that you file a verified complaint, doesn't it? Yes, Your Honor. Did you file a verified complaint in this case? I do not recall whether the complaint was verified. I think it wasn't. Okay. Then I'll accept that. I think the ruplevin count was played as part of the other two counts, but I understand that, Your Honor. You said you talked about having the memorial completed by the village, which would defeat your claim for unjust enrichment, as long as it was in substantial compliance. Yes. Is there a component of that that would require some time frame? Well, I think we'd have to go back to discovery and see what the village's plans are. We could tell that by resolutions, by contracts, by other events. If this case was remanded, we would now be in 2011 or 2012, and I think we could see through discovery what steps the village had, in fact, taken in the interim period. In theory, could the village do something very quickly that would put the memorial back on track? Possibly it could. But, again, I think the only way to figure this out is through discovery. Do you have a chance for one? Thank you. Mr. Respondent. Good afternoon. Good afternoon. I'm going to start with count one and counsel for the plaintiff, sort of the combined count one and count two, but they really are two separate legal standards, the first being count one declaratory judgment for equitable estoppel. And it's been our argument, both at the trial court and in our appellate brief, that the plaintiffs simply haven't pled the necessary elements for either declaratory judgment, which requires a legal tangible interest, or for equitable estoppel, which has specific requirements of an affirmative act that induces some action, that they have substantially changed their position. With respect to the declaratory judgment, they acknowledge that they don't own the property. They acknowledge that they don't have a lease or a license. They don't allege this in their complaint. They acknowledge that there's no property or contractual interest that would allow them on village property to construct this improvement, in this case the memorial. They fail to show and plead the elements for equitable estoppel, which is an equitable form of relief. Besides requiring certain elements to be pled, including an affirmative act, it also is equitable in that it's extraordinary relief, and it's not favored against municipal bodies or public bodies such as the village. Are there any cases that have allowed private parties to build something on public property against the village's objection or city's objection? No, I'm not aware of any, and that was something that we raised with the trial court, that all of the cases on equitable estoppel, and for that matter on the mandamus, dealt with construction or the ability to construct on private property. In this case, the relief that they're requesting would be certainly extraordinary because it would stop the village from controlling its own property. It would require demand that the village open up its property to allow a private individual and organization to construct improvements on village property. Didn't the village take affirmative steps? I mean, Mr. Morris was approached by the mayor, the passage of the resolution. Those were all village. There certainly was a resolution, and we don't dispute that that's a legislative act in the general or generic sense. We have to look at the language of the resolution to determine whether or not it provided any inducement which is required for equitable estoppel. The language does not mention the foundation as the developer, exclusive developer. It doesn't approve the plans. It doesn't provide any rights that would justify equitable estoppel or declaratory judgment or mandamus for that fact. All it did was name a memorial and dedicate it in perpetuity. So, yes, there was an affirmative act, and I shouldn't say affirmative, a legislative act. It wasn't an affirmative act that somebody could rely on, and this is very similar to the Chicago limousine case. There's a livery license ordinance, and the court granted a motion to dismiss to the city of Chicago saying the ordinance doesn't even reference the cab companies, and they could not rely on that as an inducement, the number of licenses. So one more to write here. Reading the history of the case, it appears at one time both the village and the private foundation had a joint and mutual interest in completing this project. Things were going along fine. What happened? Well, I think, you know, obviously we're bound by the facts that are in the complaint, which we don't disagree with. There's no factual dispute at this point. And you can see from looking at the complaint the timeline, and the timeline started, I think, in 2004 or 2005. Permit was issued to allow some preliminary work, and that was, I believe, in July of 2005. And we understand from the complaint that after that they solicited additional donations and did some site work and put in some improvements. And in, I believe, 2009 they came in for another permit. So four years after they started, you know, the village first considered this and issued a permit, they were coming in for the second round of permits. And what we have argued both in our motion to dismiss and in the brief is that issuing a permit, first we don't believe that the resolution provides any affirmative act, but even the issuance of permits, even if it were their property, the issuance of a permit in 2005 doesn't mandate four years later that the village issue future permits. There's no case that provides that. Setting aside that issue for the moment, does the village acknowledge that the plaintiffs obviously expended some time, effort, and money in improving the property? Was there some improvement to the village property? Yeah. And if we want to talk about unjust enrichment, I would concur that there is some enrichment. And, you know, what we consider enrichment or not, you know, there are some improvements that have been pled that were put on the property. But the question is not whether there's just enrichment. It's whether there is an unjust enrichment, and that's the equity of the relief. And for to plead an unjust enrichment cause, it's not just that there was some benefit. In this case, there were improvements made with the intent, a gratuitous intent, a donative intent that the village had no intention of paying and that they had no expectation. And if we put aside expectation, again, was it an unjust enrichment when the improvements and the work that they did are for the exact purpose for which those improvements sit there right now? Their expectations are no different now. Why don't you start splitting hairs? Doesn't the foundation want to see this through to its completion? The foundation's expectation, they're satisfied with just having some preliminary work done and then turning it over to the village. Is that accurate? Well, I think, you know, we do have to look at the fact that this is public property. Again, and we've said this, just because somebody comes on public property and makes some improvements does not mean that the public property, one, has to allow them to continue, two, has to issue them permits, and three, has to pay them for services. We would agree with that. You acknowledge there's actually a position. You acknowledge on the record there is some benefit or enrichment to the village, but you say it's not unjust enrichment. Well, I don't acknowledge that there's an enrichment. I don't dispute their factual pleadings because this was a 2615. They claim that they were enriched, that there was some enrichment. I think that's a legal issue. But you acknowledge earlier in your argument there was some enrichment to the permit? Well, I think that they argued that, and I'm not going to dispute whether there's an enrichment. We don't argue or we don't accept that this meets the pleading standards for unjust enrichment. From the pleadings, there are nine flag poles, and there's an electrical panel box, electrical wiring, and some lighting. Those were the improvements that were made to the village's property. Was there also a great deal of excavation, removal of debris on the house? Yes, absolutely. This was done from the outset and very clear in their complaint, and they acknowledge it throughout their complaint. It's in the village board meeting minutes that this was always to be done not at village expense. The village never approved any contract or appropriation or expense or approved a development agreement or a license release or construction contract, anything that would bind the village. And, yes, we're outside the contract realm. The village never expressed anything other than they understood that this was – that there was a gratuitous intent. Was there any back-up in the writing? Did the village ever memorialize this, send any letters out, signed off by the memorial foundation, that if it didn't work out, there was no accountability to the foundation? Did the village do that? No, there's no writing. We look at the complaint, the complaint in the amended complaint, where they – where the plaintiffs very clearly acknowledge and admit that they never expected to compensate, that they did this with the gratuitous intent, that services, the materials, the work was all donated. And then at the village board meeting, it was clear. Wasn't that with the expectation that this memorial was going to be built? I think what they're saying – And according to the original plans, pardon me. The expectation that the memorial would be built, that's what they claim, yes. They also claim that they should be a part of this. They otherwise would have removed all that debris, done the excavation, and taken the steps they've taken thus far if they did not expect to build this memorial. I would say that the unjust enrichment has to be – it's an equitable relief, and that there's no – I would look at it as a fairness and equitable issue that – on both sides. So we have to look at – and this is the way that the trial court did – that is it fair to change your expectations today and claim different expectations when for four, five, six years there's been an expectation that they were donating their services toward this? And now, after the fact, coming to the village and is it fair and equitable and just to say, okay, village, now I want to be paid whatever amount it is for the services that were donated to you? Unjust enrichment totally hinges on, as a matter of law, whether or not the party who's providing the benefit expects or clearly intends to get something out of it. So if somebody builds a mansion on somebody's property, there could never be any unjust enrichment unless it's clear that they didn't expect to get a benefit. I think that there are two issues on the contracts of law, and the trial court did not accept our argument on an expectation of compensation, and that's in the order. It's very clear that she did not – she did not do or accept that. Well, she didn't agree with your argument. She didn't agree with our argument that there had to be an expectation. However, she – Why would we agree with it? I think that there are two separate arguments. I think that we feel strongly that there should be some expectation of compensation and some intent to compensate from the village's standpoint. That was the argument we made that was rejected. The other argument, the contract implied in law as opposed to in fact, is that there was no gratuitous intent from the beginning, and the court finds a legal duty. In the cases that we cited, Woodfield Lanes, the court found a legal duty of the village, not in a contract, but in a recapture ordinance, that the village regarded the sewer as a benefit-deserving compensation when it enacted this recapture ordinance that would require payment. We don't see that with the resolution here. There was no legal duty that the court could find that the village would compensate. The Morewood contract, there was a contract that was rescinded. The court found a legal duty there. Canella was overtime. All of the cases find the court finds some duty of the village to compensate, not necessarily in a contract, which we don't have here, but in the circumstances surrounding the initial offer in this case to do the work, the services. And at the time that the services were rendered and throughout this entire period, those services were provided and donated with this gratuitous intent. And once we have that, to change that expectation, there's no case that says that they could do that. But I'm guessing Richmond seems to hinge on the intent of the parties. I think that there is some intention of the parties, and I think that's to protect somebody from somebody going on their property or doing something, giving them a gift, so to speak, and then later saying, well, I really meant to get paid for this, and you owe me, and here's an invoice. You have a case law that says that? And, Justin, Richmond can only lie depending upon the intent of the parties, or, for another word, you can never pursue an adjustment of Richmond claim absent some intent of the parties. Well, I think that the cases that I just mentioned talk about finding a duty, that there was some intent in Woodfield Lanes v. Schomburg. There was some intent in the village to collect those recapture fees and then pay them over to the developer, and that was not through contract, but it was through the recapture ordinance. For the Warwood contractors, there was a written contract. Granted, it was rescinded, but there was some intent to pay for the services, that we ask you to do these services. Let me give you this example. You're building improvement on a piece of property, and you accidentally build improvement on your neighbor's property. You get confused over the lot lines. There's no intent there. You're looking out the window where the owner is, and somebody's building the structure, and you don't say anything. Clearly, under those circumstances, the builder, homeowner, mistakenly is building the property. Clearly, he's not expecting to get any benefit. So in that case, then, the adjacent homeowner should be able to keep the mansion because there's no understanding about it. There's no agreement about it. Well, I would turn that around and say, why should an innocent property owner have to pay the unjust enrichment for something that it didn't contract for, it didn't intend to pay, there was no expectation, there was a mistake. And they allowed it to do here. As with the village here, they took the benefit of all this effort, excavation, building, and then shifted views. Right, and again, we would rely on the services were rendered in a donated intent that they're at some point to change the rules for the village five or six years later and require them to write a check. It's the village that changed the rules. The village said you're done. Well, if the village had hired this person, had a contract or had a construction contract, a lease, a license. So are you saying that the village can stand by and allow someone to improve public land and then say, not our problem? Well, I think we have to look at what the purpose of the improvements for. Go ahead and finish. Were the improvements to benefit the village? Were the improvements to establish a memorial and put these improvements in for this memorial? And that's how they stand. So this is not a matter of personal village enrichment. They provided these and donated these services to improve the property with a memorial, and that's exactly what sits there today are the improvements. It's not as if the village is getting something for free that it didn't already expect to get for free. Both parties' expectations were that there would be a memorial, it would be donated, and it would be constructed, and that's exactly where we are. Is there also part of that that it would be completed as the plans were originally drawn, and that was the basis for these donations that were then turned around and translated into the whatever it is that sits there now? Well, that's certainly their conclusory statement of that, which is a legal conclusion that they were unjust, that the village was unjustly enriched. But if we look at the documents that they rely on, that there was no village. Councilwoman, during that five years, did the village ever say, you know what, we're not sure about this, we don't really want you to build a memorial here? Or didn't they just let these people continue to donate and donate and donate and donate to public property and not say anything? And now you come back and say, well, it was never written in 2005. Remembering that we're at the 2016-15 stage. Certainly. Right. Well, I would say that we've gotten, the village has gotten, and the donors have gotten, and they have gotten exactly what was proposed, which was improvements to the memorial site. And they exist today. This is public property. It's a public memorial pursuant to the resolution adopted in 2005. Is it a completed memorial today? No. Right. And I think that that may have been, it wasn't pled in the complaint. Is that what they wanted, a completed memorial? Well, I think what we're talking about is the control over village property. If there was an intent that they would be the exclusive developer, then the village certainly could have hired them and they could have provided a contract that says that we are entitled to continue until it's complete. The donations were by private property owners and organizations that donated their services, again, with the intent that there be memorial improvements. And everything that was done, and I don't think counsel would object to this, still lies there today. So their expectations are still existing, and the donations were made for the exact purpose for which there is. How do you conclude that they were made for the purpose of an incomplete memorial versus a complete memorial? Well, I mean, there were, and within the bounds of the complaint, there were four or five years or four years of time period where presumably some work was being done, but the memorial could and wasn't completed. In 2009, the village, and this is also in the complaint, took over the project. They took control of their property. What have they done since 2009? Outside of the bounds of the complaint, I'm not aware of anything. We've been litigating since then. You're unaware of what's happened to this site? I'm not aware of work on the site. Okay. Any other questions? No, thanks. Thank you. Thanks. Did you wish to reply? Very briefly, Your Honors. I think unjust enrichment of the question is whether there's been a benefit and whether it would be unjust for whoever received the benefit to keep the benefit. The complaint clearly pleads a benefit, and I think as one of you pointed out, the benefit is not really the improvements, the memorial, the photo memorial that's on site. It was the cleaning of the site, the removal of debris, the grading of the site. So these are improvements to the village or for the benefit of the village that make the site more marketable, make the site better, regardless of the completion of the memorial. Counsel, pulling that thought for a second, what do you respond to the village's attorney's argument that clearly there was never any expectation of any benefit or return or compensation from the memorial foundation? And it wasn't. If everything had gone as planned, there was no expectation of compensation. But the donations were clearly conditional based upon the ability for the memorial to be completed. The question more specifically is does your unjust enrichment claim stand or fall based upon your expectation of benefit? No. And I know of no case that says the unjust enrichment claim falls based upon expectation. It rises or falls based upon whether it's fair for the person who received the benefit to keep that benefit without paying for that benefit. That's the ultimate test. And I would say that not only was our intent that the memorial be completed, but the village knew our intention. The village knew what we were looking for was a completed memorial, not a half-built memorial. What do you base that on? Well, in plugging the complaint, I base it upon the fact that the village saw our presentation, approved it, allowed us to work on it, gave us permits, was a co-applicant for a somewhat management. I mean, to say that the village didn't know that we, the foundation, were looking for a completed memorial would be a finding of fact that is both contrary to the allegations of the complaint and I think would be contrary to a completed record. I mean, it's clear that they knew what we were doing and what we expected to get out of this, which is a completed memorial. Did you have an obligation to complete this within a reasonable period of time? I mean, assuming for the sake of argument that the village was in agreement with you, they understood what you were doing back in 2005, here's the plans, here's what we're going to do, but the years tick by and it's not completed, it's not completed. My point is, at some point can the village say, okay, you're done. It's been five years, this thing is not done, we need to take it over, we don't have the money to finish the original plan, you were going to bring the donations, so... Yes, but that's not how it ended. It ended where we came back and said, let us finish, and they said, go away. Right, I get that, but because in the meantime, these four or five years that have passed, you were unable to complete it. I mean, when you came in in 2005 and said, this is what we're going to do, we're going to get donations, wasn't there implicit in that that you were going to complete it within a reasonable period of time? I think that's a fair statement, and I think the facts would show that we were working on things, that we were meeting deadlines, that there was progress, that there were benchmarks that were being hit, that there were problems that needed to be overcome and more money raised, and yes, but again, if this is a question of fact, I think the facts would show that we were being reasonable in our efforts to proceed with the memorial. Thank you. Thank you very much. We are in recess.